EXHIBIT

A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **TITAN CLOUD SOFTWARE, LLC,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:25-cv-01426** |
| | ) | **Judge Aleta A. Trauger** |
| **PROTEAN VENTURES LLC,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

**MEMORANDUM**

Titan Cloud Software, LLC ("Titan") has filed a Motion to Dismiss (Doc. No. 40) the Counterclaim (Doc. No. 35) filed by Proteän Ventures, LLC ("Proteän.")[1] For the reasons set forth herein, Titan's Motion will be mostly granted.

## I. FACTS AND PROCEDURAL HISTORY

The parties are competing companies that make software for fuel companies. (Doc. No. 35, Ans. ¶¶ 1–2.)[2] Clay Moore, formerly a Titan employee, went to work for Proteän. (*Id.* ¶¶ 11, 13.) Titan alleges that it became "concerned that Moore could not work as Protean's Chief Product Officer without inevitably disclosing Titan's confidential information and trade secrets." (Doc. No. 1, Compl. ¶ 14.) So Titan "undertook an investigation" to determine whether Moore had misappropriated its confidential and trade secret information and determined that he had. (*Id.* ¶¶ 15–20.) In April 2024, Titan brought a lawsuit in this court against Moore, in which Proteän

[1] The defendant/counter-plaintiff refers to itself as "Proteän Ventures, LLC" or "proteän." The court will use "Proteän" to refer to the defendant/counter-plaintiff, except when quoting Titan.

[2] Protean's Answer and Counterclaim appear in the same filing: Doc. No. 35. For ease of reference, the court will cite the Answer as "Ans. ¶ x" and the Counterclaim, which restarts paragraph-numbering, as "CC ¶ y."

intervened. *Titan Cloud Software, LLC v. Moore*, No. 3:24-cv-400 ("*Moore Action*"). Titan alleged that Moore was violating non-competition and non-disclosure agreements with Titan by sharing Titan's confidential and trade secret information with Proteän, his new employer. *See* Memorandum at 2–4, *Moore Action* (M.D. Tenn. Dec. 12, 2024), ECF No. 51. The court granted in part and denied in part Moore's Motion for Partial Dismissal. Order, *Moore Action* (M.D. Tenn. Dec. 12, 2024), ECF No. 52. Thereafter, pursuant to a Settlement Agreement (Doc. No. 14) between the parties, including Proteän, they dismissed the action. Stipulation of Dismissal, *Moore Action* (M.D. Tenn. Mar. 3, 2025), ECF No. 62.

The Settlement Agreement was effective as of January 28, 2025. [redacted]

In the Complaint originating this action, Titan alleges the following, much of which Proteän denies. In September 2025, one of Titan's customers, Love's Travel Stops and Country Stores, Inc. ("Love's"), told Titan that it would not renew its contract, which was set to expire at the end of 2025, and asked Titan to transfer its data from Titan's system. (Compl. ¶¶ 31–32.) That fall, Titan learned, Proteän used Love's login credentials to access Titan's systems, without Titan's permission. (*Id.* ¶ 34.) According to Titan's Terms of Use, which governed its relationship with Love's, Love's agreed "not to provide access to the Service to any third party . . . except as expressly allowed by an authorized representative of Titan." (Doc. No. 1-1, Titan End User Agreement ¶ 1.4.) Because Titan closely guards access to its software, Titan took Proteän's incursion seriously. (Compl. ¶¶ 33, 35–41.) Not only did Proteän access Titan's system, Titan

alleges, but Proteän's purported basis for doing so—retrieving Love's data—was pretextual: Titan had already said it would transfer Love's data and anyway its system showed that Proteän accessed information that "had nothing to do with migrating the customer." (*Id.* ¶¶ 31–33, 36–40, 45–49.) In any case, Titan alleges, on information and belief, "based on the extensive and continuing illicit access, Protean is using this access to copy and misappropriate Titan's Trade Secrets in furtherance of gaining Love's business and improving its own software." (*Id.* ¶ 42.) Further, and most relevant here, [redacted] (*Id.* ¶ 40.) As Titan alleges, [redacted] (*Id.* ¶ 52.) Titan alleges that Proteän "impermissibly accessed Titan's Trade Secret Information through the use of the login credentials of Titan's customer, Love's" and that "this improper access is for the purpose of copying and misappropriating Titan's Trade Secret Information." (*Id.* ¶¶ 53–54.)

On the basis of these allegations, Titan filed a Complaint in December 2025, asserting claims against Proteän for breach of contract and violations of the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.* and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (Compl. ¶¶ 51–72.) Titan filed a Motion for a Preliminary Injunction (Doc. No. 7), which the parties briefed. (Doc. Nos. 8, 24, 33.) Meanwhile, the court granted each party's motion for expedited discovery, in December 2025 and January 2026, respectively. (Doc. Nos. 19, 38.) The court noted in January and March that it would set a preliminary injunction hearing upon joint motion of the parties. (Doc. Nos. 38, 46.) Having received no such motion, on August 26, 2026 the court ordered the parties to submit a joint status report within ten days regarding whether a preliminary injunction is still needed. (Doc. No. 50.)

Proteän filed an Answer to the Complaint, which includes a Counterclaim against Titan for (1) breach of contract (Counterclaim ("CC") ¶¶ 14–18); (2) tortious interference with business relationships (*id.* ¶¶ 19–25); (3) defamation (*id.* ¶¶ 26–32); (4) deceptive trade practices in violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq.* (*id.* ¶¶ 33–41); (5) deceptive trade practices in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (*id.* ¶¶ 42–49); (6) unfair competition (*id.* ¶¶ 50–54); and (7) "injunctive relief" (*id.* ¶¶ 55–57). Proteän seeks compensatory, declaratory, and injunctive relief. (*Id.* at 19–20.) Titan has filed a Motion to Dismiss Counterclaim (Doc. No. 40) with an accompanying Memorandum (Doc. No. 41), to which Proteän has filed a Response (Doc. No. 42), and in further support of which Titan has filed a Reply (Doc. No. 44).

Count 1, for breach of contract, arises from Titan's discussion of the confidential Settlement Agreement in the Complaint. Counts 2 through 7 arise from allegations regarding Titan's communications with Love's and other unspecified parties. Proteän alleges that Titan's CEO, Brett Garrett, sent "multiple correspondences" to Love's in which he disparaged Proteän. (CC ¶¶ 6–8.) Proteän further alleges that, "[u]pon information and belief," Garrett and other Titan employees "sent other defamatory messages targeted at Proteän's customers or potential customers with the intent to disrupt Proteän's business endeavors." (*Id.* ¶ 9.) Proteän alleges that Titan's communications with Love's and others "were made intentionally and without justification, included false and/or misleading statements about Proteän's business, capabilities, and reputation, and were designed to cause existing and potential customers to cease or refrain from doing business with Proteän." (*Id.* ¶ 12.)

With its Response to the Motion for a Preliminary Injunction, Proteän filed emails from Garrett to Love's employees (Doc. No. 24-1 at 4–7), to which it refers in the Counterclaim. (CC

¶¶ 7–8.) On November 11, 2025, Titan's CEO, Garrett, wrote to Kevin Nickell, whose position the parties do not state, at his "@loves.com" email address. (Doc. No. 24-1 at 5–6.) The email describes how Proteän accessed Titan's system. (*Id.* at 5.) The email states: "We consider this to be a very serious matter as it violates our terms of use and results in a competitor having access to our confidential, trade secret information." (*Id.*) It continues: "Titan has previously been in litigation with Protean and Protean's unauthorized access of our systems violates our settlement agreement with them and will likely embroil the parties in further litigation." (*Id.*) Garrett adds that, "[w]hile we don't want to prevent a customer like Love's from moving away from Titan to another vendor if they so choose, in the case of Protean specifically we are compelled to tell you that doing so may result in an operational mess for Love's and a potential second migration since we believe Protean is in violation of the settlement agreement." (*Id.* at 6.) Two days later, Garrett sent another email, this time to both Nickell and Tim Langley-Hawthrone, whom the parties do not identify, also at his "@loves.com" email address. Garrett wrote:

> [O]ur board has voted to pursue litigation against Protean to the maximum extent allowable. Given the prior settlement terms that they have breached and the data we've discovered to date, I'd have concerns around whether Protean will be able to serve Love's or any of its customers going forward, as this litigation is likely to render Protean illiquid. As you know, Titan is always standing by to support Love's and work with your team on product innovation — we'd be honored to continue our relationship.

*Id.* at 5.

## II. LEGAL STANDARDS - RULE 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (omission in *Twombly*). While Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

A Rule 12(b)(6) motion to dismiss tests the complaint's legal sufficiency. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). But a complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). In ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Eastep v. City of Nashville*, 156 F.4th 819, 826 (6th Cir. 2025) (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 517 (6th Cir. 2016)), *cert. denied sub nom. Eastep v. Carrick*, 146 S. Ct. 1816 (2026).

When presented with a Rule 12(b)(6) motion, the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). Otherwise,

if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## III. DISCUSSION

### A. Breach of Contract

The Settlement Agreement provides that [redacted] Proteän alleges that Titan breached the Settlement Agreement's confidentiality provision by discussing it in the Complaint. (CC ¶¶ 2–4, 10–11.) The court observes that, while the Complaint was filed and remains under seal, the redacted version of the Complaint, filed on the public docket, also refers to the Settlement Agreement. (*See* Doc. No. 20 ¶ 23 ("Titan settled the Moore Litigation by entering into a Settlement Agreement with Moore and Protean, effective January 28, 2025.").) As a result of the breach, Proteän alleges, it has and continues to suffer "damages, including lost profits, lost business opportunities, harm to reputation and goodwill, costs of mitigation, harm to its business relationships and financial interests, attorneys' fees and other expenses." (*Id.* ¶ 18.) Proteän does not elaborate on the foregoing.

The elements of a breach of contract under Tennessee law are the existence of a contract, breach, and damages caused by the breach. *Edward Jackson Younger Fam. Irrevocable Tr. ex rel. Younger v. Ross*, No. E2024-01338-COA-R3-CV, 2025 WL 3158820, at *16 (Tenn. Ct. App. Nov. 12, 2025) (citation omitted).[3] Other than stating that the Counterclaim includes only a "conclusory

---

[3] [redacted]

recitation of the elements of a breach of contract claim," Titan argues only that Proteän does not plead damages. (Doc. No. 41 at 4 (citing *Hamm v. Wyndham Resort Dev. Corp.*, 2019 WL 6273247, at *8 (M.D. Tenn. Nov. 25, 2019)); *see also id.* ("[A]t no point does Protean even attempt to connect Titan's citations to the Settlement Agreement in the complaint to any damages suffered by Protean.").)

Proteän distinguishes *Hamm* and refers to the Counterclaim's "explicit allegation[] . . . that as a result of the . . . [breach], Proteän suffered specific damages, such as lost profits, lost business opportunities, harm to its reputation, and more." (Doc. No. 42 at 3 (citing CC ¶¶ 13, 18).) Proteän maintains that this allegation is sufficient to state a claim. (*Id.* at 4 (citing *Expert Janitorial, LLC v. Williams*, No. 3:09-cv-283, 2010 WL 908740, at *9 (E.D. Tenn. Mar. 12, 2010)).) Titan's Reply reiterates that the "Counterclaim's vague references to these categories of damages are . . . 'threadbare recitals'" insufficient to state a claim. (Doc. No. 44 (first quoting *Iqbal*, 556 U.S. at 678; and then citing *Hamm*, 2019 WL 6273247, at *8).)

As Proteän argues, *Hamm* is distinguishable. There, this court found that the plaintiff had not alleged a breach, and briefly noted that the allegation that the breach "caus[ed] the plaintiffs monetary damages" was insufficient to allege damages. *Hamm*, 2019 WL 6273247, at *8. In *Expert Janitorial*, on which Proteän relies, the court found that the plaintiff's allegation that it "suffered 'actual and consequential damages . . . as well as injunctive and equitable relief'" was "sufficient to state a claim for damages." *Expert Janitorial*, 2010 WL 908740, at *9. Other courts have found similarly succinct allegations of damages sufficient under Rule 8 and denied Rule 12(b)(6) motions to dismiss breach of contract claims. *See, e.g.*, *Donan Eng'g Co. v. Heinen*, No.

---

[redacted] But because Protean does not object to Titan's application of Tennessee law to its breach of contract counterclaim (Doc. No. 41 at 3; Doc. No. 42 at 3–4), the court will apply Tennessee law.

3:21-cv-00683-GNS, 2022 WL 1274398, at *4 (W.D. Ky. Apr. 28, 2022) ("[The plaintiff] alleges that due to this breach it suffered damages such as 'the value of its employees' time spent repairing the harm done by the breach, loss of business, increased costs of business, lost profits, loss of corporate opportunity, and the attorneys' fees and costs Donan has been forced to incur in connection with this action.'"); *Compuware Corp. v. Affiliated Computer Servs., Inc.*, No. 12-10431, 2012 WL 1094349, at *2 (E.D. Mich. Apr. 2, 2012) ("Plaintiff states that as a result of Defendant's breach, Plaintiff suffered damages in the form of lost profits, lost business opportunities, and damaged goodwill. Plaintiff has adequately alleged the elements of a breach of contract claim.").

As the court mentioned, Titan does not argue that Proteän has not plausibly alleged a breach, and the court will not *sua sponte* determine the issue. *Accord In Re Chrysler Pacifica Fire Recall Prods. Liab. Litig.*, 143 F.4th 718, 725–26 (6th Cir. 2025) ("A court transcends its limited role as neutral arbiter in this system if it proceeds to act as a 'self-directed board of legal inquiry' and decide[s] issues that the parties never presented." (quoting *NASA v. Nelson*, 562 U.S. 134, 147 n.10 (2011))). And it is the movant's burden to demonstrate that the plaintiff has failed to state a claim for relief. *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 859 (6th Cir. 2023) (citing *Taylor v. City of Saginaw*, 922 F.3d 328, 331–32 (6th Cir. 2019)). The court will not dismiss the breach of contract claim.

**B. Defamation**

Proteän alleges that Titan made false statements to Love's and "third parties . . . to be determined" about its "business, products, services, and/or integrity." (CC ¶ 28.) Proteän alleges that Titan made these statements "with actual malice, knowing their falsity or acting with reckless disregard for the truth," with the intent to "harm Proteän's reputation and deter third parties from associating or dealing with Proteän." (*Id.* ¶¶ 29–30.) As a result, Proteän alleges, it has "suffered

damages including lost business opportunities, lost profits, damaged relationships with customers, reputational harm, and other financial losses." (*Id.* ¶ 31.)

To state a defamation claim, the plaintiff must plead that (1) "a party published a statement"[4] and did so either (2) "with knowledge that the statement is false and defaming to the other" or (3) "with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580B (1977)). The plaintiff must also "allege actual damages." *Roe v. Lowe*, No. 3:24-cv-00368, 2024 WL 4778042, at *14 (M.D. Tenn. Nov. 13, 2024) (Crenshaw, C.J.) (citing *Brown*, 428 S.W.3d at 50).

Titan moves to dismiss Proteän's defamation counterclaim. The Counterclaim identifies two statements Titan's CEO, Brett Garrett, made in emails to Love's. First, Garrett wrote, "Protean is in violation of the settlement agreement." (CC ¶ 7.) Second, Garrett wrote that, "[g]iven the prior settlement terms that [Proteän has] breached and the data we've discovered to date, I'd have concerns around whether Protean will be able to serve Love's or any of its customers going forward, as this litigation is likely to render Protean illiquid." (*Id.* ¶ 8 (alteration in original).) Titan ignores that Garrett twice stated that Proteän breached the Settlement Agreement. Titan's sole basis for dismissal is that Garrett made "purely a statement of opinion about the potential ramifications of this litigation," and, Titan maintains, "statements of opinion are not actionable." (Doc. No. 41 at 7 (citing *Thompson v. Hayes*, 748 F. Supp. 2d 824, 835 (E.D. Tenn. 2010)).)

---

[4] "Publication" means "the communication of defamatory matter to a third person." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 50 (Tenn. Ct. App. 2013) (quoting *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994)). Titan does not argue that it did not publish a statement.

Proteän makes two arguments in response. First, Proteän argues that Titan ignores that, in two separate emails, Garrett accused it of violating the Settlement Agreement, which, Proteän argues, is defamatory. (Doc. No. 42 at 6–7.) Under Tennessee law, a statement is defamatory if it:

> constitute[s] a serious threat to the plaintiff's reputation. A libel does not occur simply because the subject of a publication finds the publication annoying, offensive or embarrassing. The words must reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule. They must carry with them an element "of disgrace."

*Brown v. Mapco Exp.*, Inc., 393 S.W.3d 696, 708 (Tenn. Ct. App. 2012) (quoting *Kersey v. Wilson*, No. M2005-02106-COA-R3-CV, 2006 WL 3952899, at *3 (Tenn. Ct. App. Dec. 29, 2006)).

When evaluating a motion to dismiss, the "court's central inquiry is 'whether a communication is capable of conveying a defamatory meaning.'" *Schuchardt v. Bloomberg L.P.*, No. 3:22-cv-01017, 2024 WL 1144226, at *13 (M.D. Tenn. Mar. 15, 2024) (quoting *Brown*, 393 S.W.3d at 708). Titan ignores that Garrett stated that Proteän breached the Settlement Agreement and instead addresses only Garrett's "opinion about the potential ramifications of this litigation." (Doc. No. 41 at 7.) Titan argues that this opinion "does not contain a statement of 'objective facts.'" (Doc. No. 44 at 4.) But Titan simply makes no argument that accusing a competitor of violating an agreement could not be defamatory; nor does it respond to Proteän's argument on this point. (Doc. No. 44 at 4.) Proteän either did or did not breach the Settlement Agreement. Proteän alleges that it did not, that Titan's saying so was defamatory, and that it was thereby damaged. (CC ¶¶ 5–8, 27–32.) Proteän has stated a colorable defamation claim based on Garrett's statements that Proteän breached the Settlement Agreement.

Separately, Proteän argues that Titan improperly describes Garrett's statement—as to the result of this litigation—as mere opinion: "[T]he statement 'I'd have concerns' merely couches a factual statement in terms of opinion to avoid liability for the false statement." (Doc. No. 42 at 6–

7.) Titan is broadly correct that mere statements of opinion "are not actionable defamation." *Whiting v. City of Athens*, 170 F.4th 439, 447 (6th Cir. 2026) (citing *Stones River Motors, Inc. v. Mid-S. Pub. Co.*, 651 S.W.2d 713, 720 (Tenn. Ct. App. 1983)). But "an opinion may be actionable if the communicated opinion may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Hill v. State*, No. M2022-01749-COA-R3-CV, 2025 WL 1078167, at *7 (Tenn. Ct. App. Apr. 10, 2025) (quoting *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000)). Indeed, as the court stated in an opinion Titan cites for support (Doc. No. 44 at 4), "[a]fter all, 'expressions of "opinion" may often imply an assertion of objective fact.'" *Battle v. A & E Television Networks, LLC*, 837 F. Supp. 2d 767, 775 (M.D. Tenn. 2011) (Sharp, J.) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)). And as the Supreme Court explained in *Milkovich*, "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth." *Milkovich*, 497 U.S. at 18; *see also id.* at 19 ("[T]he statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'").

In this case, it is not a defense to a defamation claim that Garrett merely relayed his own concerns that Proteän would be rendered illiquid by this litigation. Implied in that statement is an assertion of certain facts: that Proteän is liable for the claims Titan claims it is, including that it breached the Settlement Agreement and violated state and federal trade secrets law. The court will not dismiss Proteän's counterclaim for defamation.

**C. Deceptive Trade Practices**

Proteän alleges that Titan's communications with Love's and unspecified others constituted deceptive trade practices in violation of both the TCPA (Count 4) and the Lanham Act (Count 5). (CC ¶¶ 6–9, 33–49.) Both statutes "prohibit a company from falsely advertising or misrepresenting the goods, services, and activities of another company, or itself, if such false

advertisement or misrepresentation damages the other company." *FedEx Ground Package Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 450 (6th Cir. 2024) (first citing 15 U.S.C. § 1125(a)(1)(B); and then citing Tenn. Code Ann. §§ 47-18-104(b)(8), -109(a)(1)).

The Lanham Act prohibits companies from using "in commerce" any "false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The TCPA prohibits "[d]isparaging the goods, services or business of another by false or misleading representations of fact." Tenn. Code Ann. § 47-18-104(b)(8). Because of the similarities between the two statutes, courts "analyze TCPA statutory-disparagement claims the same way we analyze Lanham Act false-advertising claims." *FedEx*, 97 F.4th at 459 (citing *La.-Pac. Corp. v. James Hardie Bldg. Prods., Inc.*, 928 F.3d 514, 517–20 (6th Cir. 2019)). Under both statutes, "only statements of fact are actionable." *Id.* at 453, 459; *see* Tenn. Code Ann. § 47-18-104(b)(8) (prohibiting "false or misleading representations of *fact*" (emphasis added)).

Titan's sole ground for the dismissal of Proteän's deceptive trade practices claims is that Garrett's email to Love's was merely "a statement of opinion regarding the potential implications of this litigation," and therefore "is not actionable" under either statute. (Doc. No. 41 at 8 (TCPA); *id.* at 10 (Lanham Act) (same); *see also id.* ("Protean does not point to any language in Titan's email . . . that is false or misleading.").) In response, Proteän argues that it "has alleged that [Titan] made false statements about Proteän's contractual compliance to Proteän's customers, which falls squarely within the TCPA and Lanham Act's prohibition." (Doc. No. 42 at 9.) In its Reply, Titan ignores that Garrett told Love's that Proteän violated the Settlement Agreement, as it did with respect to the defamation claim. Instead, Titan reiterates its position that Garrett's email

"constituted a matter of opinion and is not actionable as a deceptive trade practice." (Doc. No. 44 at 5 (citing *Horst v. Gaar* No. W2023-00442-COA-R3-CV, 2024 WL 4972013, at *9 (Tenn. Ct. App. Dec. 4, 2024)).)

In *Horst*, the statement at issue was: "Horst was leaving Memphis and moving back to Las Vegas permanently, therefore jeopardizing the service and expertise that Hamm was used to getting from Horst." *Horst*, 2024 WL 4972013, at *9. As the Court of Appeals reasoned, "that Mr. Horst's service was allegedly being jeopardized involves a conjectural opinion as to how a move would affect service, and is not itself an actionable 'false or misleading representation of fact.'" *Id.* (quoting Tenn. Code Ann. § 47-18-104(b)(8)) (footnote omitted). In this case, by contrast, Titan's CEO did not merely express an opinion about Proteän's continued ability to provide fuel software. Rather, Garrett stated that Proteän had violated their Settlement Agreement and, for that reason, would be ruined after it lost this case. As the court described above, there is a fact of the matter regarding whether Proteän violated the Settlement Agreement, and Proteän alleges that it did not. (CC ¶ 5.) For the reasons the court explained when discussing Proteän's defamation claim, Proteän has alleged that Titan's CEO made false statements about its compliance with the Settlement Agreement and its ability, as a result of this litigation—which Garrett stated would render it illiquid—to render adequate services. Garrett's statements to Love's included statements of fact that could give rise to claims for deceptive trade practices.

Titan does not move for dismissal of the two deceptive trade practices claims on any additional bases, and the court will not *sua sponte* determine whether Proteän has plausibly alleged the elements of a deceptive trade practices claim under state or federal law. The court will not dismiss the deceptive trade practices claims.

**D. Unfair Competition**

Proteän alleges that Titan has engaged in unfair competition "by breaching the Settlement Agreement, by engaging in deceptive trade practices, and by defaming Proteän." (CC ¶ 51.) Proteän alleges that Titan's conduct "has deprived Proteän of existing and prospective customers" and that it has caused Proteän to "suffer[] damages including lost business opportunities, lost profits, damaged relationships with customers, reputational harm, and other financial losses." (*Id.* ¶¶ 52–53.)

To succeed on an unfair competition claim under Tennessee law, a plaintiff must show "conduct that amounts to a recognized tort" and that the "tort deprives the plaintiff of customers or other prospects." *Titan Cloud Software, LLC v. Moore*, No. 3:24-cv-00400, 2024 WL 5110062, at *5 (M.D. Tenn. Dec. 12, 2024) (quoting *FTA Enters., Inc. v. Pomeroy Computer Res., Inc.*, No. E2000-01246-COA-R3-CV, 2001 WL 185210, at *5 (Tenn. Ct. App. Feb. 12, 2001)). Titan's sole argument for dismissal of the unfair competition claim is that Proteän has not alleged a predicate tort. (Doc. No. 41 at 10–11 ("Titan did not breach the Settlement Agreement . . . did not engage in deceptive trade practices . . . and did not defame Protean.").) Proteän has stated a claim for deceptive trade practices and defamation. Accordingly, the court will not dismiss the unfair competition claim.

**E. Tortious Interference with Business Relationships**

Count 2 is styled "tortious interference with business relationships," which, in Tennessee, is equivalent to "intentional interference with business relationships." *See Stinson v. Dalton*, No. 08-2076, 2009 WL 10664880, at *3 n.3 (W.D. Tenn. Jan. 29, 2009) ("The difference is one in terminology only." (citing *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002))). Proteän alleges that Titan intentionally interfered with its business relationships "with various entities, including Love[']s," by "sending emails and other communications designed to

disrupt Proteän's business, including false and/or misleading statements about Proteän." (CC ¶¶ 21, 23.) This resulted in "damages including lost business opportunities, lost profits, damaged relationships with customers, reputational harm, and other financial losses." (*Id.* ¶ 24.) In addition, because Titan's conduct was "willful and malicious," Proteän maintains that it is entitled to "punitive or exemplary" damages. (*Id.* ¶ 25.)

To set forth a claim for intentional interference with business relationships ("IIBR"), a party must adequately plead:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and . . . (5) damages resulting from the tortious interference.

*4U2ASKY Ent., Inc. v. Offor*, No. M2023-00238-COA-R3-CV, 2026 WL 653529, at *20 (Tenn. Ct. App. Mar. 9, 2026) (quoting *Trau-Med*, 71 S.W.3d at 701 (omission in *4U2ASKY Ent.*) (citation omitted)). Titan argues that Proteän has not pleaded IIBR's fourth or fifth elements.

*1. Improper motive or means*

The "Tennessee Supreme Court [has] made plain that the tort is addressed to '*improper* conduct extending beyond the bounds of doing business in a freely competitive economy.'" *Id.* (quoting *Trau-Med*, 71 S.W.3d at 700 (Tenn. 2002)). The "gist of an IIBR claim is that the plaintiff's non-contractual business relationship with another was intentionally interfered with by a third party, the purported tortfeasor." *BNA Assocs. LLC v. Goldman Sachs Specialty Lending Grp., L.P.*, 63 F.4th 1061, 1064 (6th Cir. 2023) (citing *Trau-Med*, 71 S.W.3d at 698–701).

To state an IIBR claim, a plaintiff must allege that the defendant had an "improper motive" or used "improper means." To show an improper motive, Tennessee courts "require that the

plaintiff demonstrate that the defendant's predominant purpose was to injure the plaintiff." *Trau-Med*, 71 S.W.3d at 701 n.5 (citation omitted). Improper means include:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules, violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship, and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

*Id.* (citations omitted).

Proteän alleges that Titan "sen[t] emails and other communications designed to disrupt Proteän's business, including false and/or misleading statements about Proteän." (CC ¶ 23; *see also id.* ¶ 9 (alleging that Garrett and other Titan employees "sent other defamatory messages targeted at Proteän's customers or potential customers with the intent to disrupt Proteän's business endeavors."); *id.* ¶ 12 (alleging that Garrett and other Titan employees made "false and/or misleading statements about Proteän's business, capabilities, and reputation").) In addition, Proteän alleges that Garrett wrote to Love's—which had by then decided to leave Titan for Proteän—to report that Proteän had violated the Settlement Agreement. In doing so, he predicted that the ensuing litigation "may result in an operational mess for Love's," and expressed "concerns around whether Protean will be able to serve Love's or any of its customers going forward, as this litigation is likely to render Protean illiquid." (Doc. No. 24-1 at 5–6.)

Titan argues that it "[s]imply . . . informed an outgoing customer of pending litigation regarding that customer's move to a competitor," which amounts to "doing business in a freely competitive economy." (Doc. No. 41 at 5 (quoting *Renasant Bank v. Ericson*, 801 F. Supp. 2d 690, 704 (M.D. Tenn. 2011) (Sharp, J.)).) Titan further describes Garrett's emails as including "statements [that] informed a customer of pending litigation and expressed concern about a competitor's financial stability." (Doc. No. 44 at 3.) Proteän points to its allegations that Garrett

and others sent false and disparaging messages "to cause existing and potential customers to cease or refrain from doing business with Proteän." (Doc. No. 42 at 5 (quoting CC ¶ 12).)

As the court explained, it will not dismiss Proteän's defamation, unfair competition, or deceptive trade practices claims, which are based on the same conduct as the intentional interference claim. The court finds that, therefore, at the motion to dismiss stage, Proteän has pleaded improper means or motive.

*2. Damages*

A plaintiff bringing an IIBR claim must allege that he "suffered an injury 'resulting from' the defendant's interfering actions." *Acad. of Allergy & Asthma in Primary Care v. Amerigroup Tenn., Inc.*, 155 F.4th 795, 826 (6th Cir. 2025) (citing *Trau-Med*, 71 S.W.3d at 701), *petition for cert. filed*, (June 16, 2026) (No. 25-1388). Titan argues that Proteän "does not allege any specific facts as to how it was damaged by Titan's conduct." (Doc. No. 41 at 5.) Instead, Titan argues, Proteän's allegation that it "has suffered damages including lost business opportunities, lost profits, damaged relationships with customers, reputational harm, and other financial losses" is conclusory and therefore Proteän has failed to state a claim for IIBR. (*Id.* at 5–6 (quoting CC ¶ 24).)

Titan is correct that a "complaint for tortious interference must do more than merely state the legal elements of the cause of action." *Ingram v. Tenn. Dep't of Health*, No. 3:17-cv-01565, 2021 WL 3490025, at *18 (M.D. Tenn. Aug. 9, 2021) (Newbern, J.), *R. & R. adopted*, 2021 WL 6066450 (M.D. Tenn. Dec. 22, 2021) (Richardson, J.). Rather, "[t]o plead the damages element, a plaintiff must allege it has experienced some kind of economic loss or hardship as a result of the defendant's tortious conduct." *Mfg. Repair & Overstock, Inc. v. Kasinger*, No. 1:24-cv-268, 2025 WL 1208690, at *16 (E.D. Tenn. Apr. 25, 2025) (citing *Testerman v. Tragesser*, 789 S.W.2d 553, 556–57 (Tenn. Ct. App. 1989)). In *Kasinger*, for example, the court found that the plaintiff's

allegation that it "has been harmed, and is continuing to be harmed" and that it "has been damaged, and is continuing to be damaged" were "conclusory at best." *Id.* ("[The plaintiff] never elaborates on *how* Kasinger's alleged tortious interference harmed it, and its allegations are altogether insufficient to plead damages." (citing *BNA Assocs.*, 63 F.4th at 1063–64)).

At the same time, however, while the allegations "in support of damages could be described as 'generic or boilerplate, even so, a plaintiff need not allege specific damages at the pleading stage to state a cause of action for tortious interference with business relations.'" *Tom James Co. v. Rich*, No. 3:24-cv-01310, 2025 WL 1908058, at *4 (M.D. Tenn. July 10, 2025) (quoting *Spectrum Lighting & Controls, Inc. v. SESCO Lighting, Inc.*, No. 2:18-cv-02253-TLP-cgc, 2018 WL 5905935, at *3 (W.D. Tenn. Nov. 9, 2018) (quotation modified)). For example, in *CoreCivic of Tennessee, LLC v. Universal Strategic Advisors, LLC*, the court found that the plaintiff's allegation that it "suffered damages in the form of lost profits and future business" was sufficient to "allege[] . . . [that] damages resulted from the tortious interference." No. 3:25-cv-00514, 2026 WL 561390, at *7 (M.D. Tenn. Feb. 27, 2026) (Crenshaw, J.). Accordingly, the court finds that Proteän has pleaded damages and will not dismiss the IIBR claim.

**F. Injunctive Relief**

Count 7, "Injunctive Relief," is derivative of the allegations regarding breach of contract and unfair competition. (CC ¶ 56.) "Injunctive relief is not a cause of action, it is a remedy." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 587 (6th Cir. 2021) (quoting *Thompson v. JPMorgan Chase Bank, N.A.*, 563 F. App'x 440, 442 n.1 (6th Cir. 2014)). Proteän may be entitled to injunctive relief, but the separate claim for injunctive relief must be dismissed, as Titan argues. (Doc. No. 41 at 11 (citing *Tenn. Riverkeeper v. Waste Connections of Tenn., Inc.*, 769 F. Supp. 3d 784, 795 (M.D. Tenn. 2025)).)

## IV. CONCLUSION

For the foregoing reasons, Titan's Motion to Dismiss Counterclaim (Doc. No. 40) will be mostly granted. Specifically, the court will grant Titan's Motion as to Proteän's counterclaim for injunctive relief (Count 7) and deny the Motion as to Counts 1–6 of the Counterclaim.

Because this Memorandum discusses sealed materials, it will temporarily be filed under seal. The parties will be ordered to jointly file an agreed redacted version of this Memorandum.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge